UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MARINO FLORES, LAURA PASTORE and
ROBERT C. PASTORE

<div style="float:right">
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: ___10-16-12___
</div>

                    Plaintiff,

          -against-

**MEMORANDUM DECISION
AND ORDER**

10-Civ-4332 (GAY)

J & B CLUB HOUSE TAVERN, INC., and
JOSEPH SCORDATO
                    Defendant(s).
--------------------------------------------------------X

Plaintiffs Laura Pastore ("L. Pastore") and Robert C. Pastore ("R. Pastore") filed this action against Defendant J & B Clubhouse Tavern, Inc. ("J & B"), alleging violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. and New York Labor Law ("NYLL"), § 190 et seq., § 650, et seq. and its ensuing regulations, 12 New York Codes, Rules, and Regulations ("NYCRR"), tit. 12, § 142-2.2, 142-2.4. By partial stipulation and Order of Dismissal, Marino Flores was terminated as a plaintiff on February 15, 2011. (See Dkt. #17.) The claims against Defendant Joseph Scordato were stayed when he filed for bankruptcy protection on January 31, 2012. The Complaint alleges that the Defendant violated the FLSA and NYLL minimum wage and overtime compensation provisions as well as the NYLL spread of hours provisions. Additionally, Plaintiff R. Pastore alleges breach of contract and unjust enrichment claims.

By Memorandum Decision and Order dated August 24, 2012, the Court granted Plaintiffs' motion for summary judgment on the issue of liability under the FLSA and

NYLL. The Court ordered the Plaintiffs to provide the Court with the documentation of damages by September 24, 2012.

Presently before the Court is Plaintiffs' motion for damages, attorney's fees, and costs pursuant to 42 U.S.C. 1988 and Federal Rules of Civil Procedure ("FRCP") 54(d). For the reasons that follow, Plaintiffs' motion is granted in the amount specified below.

## I.  CALCULATION OF DAMAGES

### A. Laura Pastore

Plaintiff L. Pastore seeks the amount of $6,832 in damages as payment for work done in October 1, 2008 through December 2008. This amount is inclusive of liquidated damages. In her declaration in support of Plaintiffs' motion for summary judgment, she set forth that her weekly salary was $280. Additionally, she has submitted a copy of a check for the amount of $280 made payable to her by the Defendant Joseph Scordato dated May 27, 2009 as corroboration that her weekly pay of $280 was reflected in her calculation of damages. Defendants do not oppose the requested damages. Accordingly, the Court concludes that L. Pastore should be awarded damages in the amount of $6,832.

### B. Robert Pastore

Plaintiff R. Pastore seeks the amount of $120,909.36 in damages as compensation for unpaid minimum wage and overtime under FLSA and NYLL. As such, he bears the burden of proving that he performed the work for which he claims Defendant did not compensate him. See Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687 (1946) (An employee seeking to recover unpaid minimum wages or

overtime under FLSA ordinarily "has the burden of proving that he performed work for which he was not properly compensated."). Here, the employer has failed to maintain records of the employee's wages, hours, and other terms and conditions of employment as required by FLSA. As such, Plaintiff may meet his burden by proving that "he has in fact performed work for which he was improperly compensated and [by] produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." Tlacoapa v. Carregal, 386 F.Supp.2d 362, 367 (S.D.N.Y. 2005) (quoting Anderson, 328 U.S. at 687).

 R. Pastore sets forth in his Declaration and in the Statement of Undisputed Facts Pursuant to Local Civ. Rule 56.1, that he is owed the amount of $120,909.36. He alleges that this amount includes unpaid minimum wages, overtime, and differences in pay between the $900/week rate for which he was employed and the $620/week for which he was paid. Additionally, R. Pastore provided the Court with the time period he worked for the Defendant and how much he was compensated. Finally, he submitted copies of various checks made payable to him by Defendant Joseph Scordato as corroboration for his calculations of damages. The Court concludes that R. Pastore has established that he performed the work and that he was not compensated for the work he performed. Additionally, based on the evidence provided, the Court notes that Defendant compensated R. Pastore at a rate below the minimum wage for those times that Defendant compensated R. Pastore. Thus, he has carried his burden. Moreover, Defendants have not opposed the requested damages.  Thus, in light of these factors, the Court concludes that R. Pastore should be awarded damages in the amount of $120,909.36.

3

## II. CALCULATION OF ATTORNEY'S FEES

In calculating attorney's fees, the court multiplies a reasonable hourly rate by the reasonable number of hours expended on the case to produce the "presumptively reasonable fee." Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F. 3d 182, 189-90 (2d Cir. 2008). In setting the reasonable hourly rate, "a court must determine what a reasonable paying client would be willing to pay for the legal services, in other words, the appropriate market rate for counsel over the course of the number of hours appropriately worked." Torres v. City of New York, No. 07 Civ. 3473, 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008). The "presumptively reasonable fee" is then calculated via the traditional "lodestar method": the reasonable hourly rate is multiplied by the reasonable number of hours expended. See Arbor Hill, 493 F.3d at 111-12. In order to calculate the reasonable hours expended, the prevailing party's fee application must be supported by contemporaneous time records, affidavits and other materials. See Chambliss v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989). Upon calculation of the "presumptively reasonable fee" amount, the Court should "make any appropriate adjustments to arrive at the final fee award." Adorno v. Port Auth. of New York and New Jersey, 685 F. Supp.2d 507, 511 (S.D.N.Y. 2010). Moreover, the Second Circuit has cautioned that "attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1139, 1148 (2d Cir. 1983) (internal citations and quotations omitted).

4

## A.  REASONABLE HOURLY RATE

Determination of the reasonable hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel [, which] may . . . include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." See Farbotko v. Clinton County of New York, 433 F.3d 204, 209 (2d Cir. 2005) (citations omitted). The Second Circuit has stated that, in determining what rate a paying client would be willing to pay, the district court should consider the following factors enumerated in the case of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974):

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

See Arbor Hill, 522 F.3d at 186 n. 3 (citing Johnson, 488 F.2d at 717-19). In addition to the Johnson factors, the district court should also consider:

> the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney

expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

See id. at 184. At bottom, the party seeking a fee award "has the burden of showing by satisfactory evidence–in addition to the attorney's own affidavits–that the requested hourly rates are the prevailing market rates." Farbotko, 433 F.3d at 209 (citations and internal quotation marks omitted).

Here, attorneys George Diamantopoulos ("Mr. Diamantopoulos"), Lucas Middlebrook ("Mr. Middlebrook"), Nicholas Granath ("Mr. Granath"), Sue Edwards ("Ms. Edwards"), Lee Seham ("Mr. Seham"), Stanley Silverstone ("Mr. Silverstone"), and Paralegals Peter Fabiankovic ("Mr. Fabiankovic") and Krista Van Sant ("Ms. Van Sant") worked on the Plaintiffs' matter. Each attorney seeks compensation at the rate of $300 per hour. Additionally, the Plaintiffs seek compensation for Mr. Fabiankovic at the rate of $150 per hour and for Ms. Van Sant at the rate of $100 per hour.

In the affirmation in support of fee request, the attorneys listed their years of admission to the bar as follows: Mr. Diamantopoulos (1991), Mr. Middlebrook (2006), Mr. Granath (1989), Ms. Edwards (2005), Mr. Seham (1988), and Mr. Silverstone (1991). The attorneys also provided the Court, as Plaintiffs' Memorandum Exhibit C, a list of representative matters handled by the firm. However, none of these attorneys has met his or her burden of establishing the reasonableness of the requested hourly rates. Other than the information previously noted, none of the attorneys provided information as to their experience, reputation, and ability. While the Court has in its possession the list of cases handled by the firm, the Court has no way of telling which of the attorneys

handled what case. As such, the list of cases offered to the Court is of little to no value

to the Court in deciding the reasonableness of the requested hourly rate.

Having considered all of the factors in <u>Johnson</u> and <u>Arbor Hill</u>, the Court notes

that the instant case is not unusually complex, that it did not demand too great of

resources and that there were no unusual timing demands on the case. The Court

further takes into account the fact that Mr. Diamantopoulos was clearly the lead counsel

and that the attorneys conferred among each other too often, for which they billed the

Plaintiffs. <u>See, e.g.</u>, Pls.' Mem., Ex. D (Jan. 10 2010 billing – Mr. Middlebrook – confer

with Lee Sahem regarding settlement terms (.1); Jan. 11, 2010 – Mr. Middlebrook –

"confer with Lee Sahem regarding teleconference with R. Pastore" (.1); Jan. 27, 2010 -

Mr. Middlebrook – "confer with Lee Sahem regarding teleconference with R. Pastore"

(.1); Jan 29, 2010 – Mr. Middlebrook – "confer with Lee Sahem regarding settlement

terms" (.1); Feb. 4, 2010 – Mr. Middlebrook – "confer with Lee Sahem regarding

settlement discussions" (.1); Mar. 8, 2010 – Mr. Granath – "confer with Aty Middlebrook"

(.5); Mar. 9, 2010 – Mr. Granath – "confer with Aty. Middlebrook in support of drafting

complaint" (.6); Mar. 10, 2010 – Mr. Granath – "confer with Aty. Middlebrook in support

of drafting complaint" (.5); Mar. 18, 2010 – Mr. Granath – "confer with Aty. Middlebrook

for revising draft complaint" (.9); Mar. 24, 2010 – Mr. Granath – "confer with Aty.

Middlebrook on revision to the complaint" (.2); Mar. 29, 2010 – Mr. Granath – "confer

with Aty. Middlebrook for revising draft complaint" (.5). The list goes on.). Given Mr.

Diamantopoulos's clear position as the lead attorney, and Mr. Middlebrook and Mr.

Sahem's familiarity with the case, evident from the constant conference with both

attorneys for work done on the case by the other attorneys, the Court sees no justifications for the hourly rates for the other attorneys in the case.[1]

The Court is cognizant of the facts that, in this district, hourly rates for civil rights and employment law litigators with approximately ten years of experience in small firms have ranged from $250 - $350 per hour. See Garcia v. Giorgio's Brick Oven & Wine Bar, 2012 WL 3339220, at *7 (S.D.N.Y. Aug. 15, 2012) (awarding $350 per hour to an attorney with ten years of experience, who was the "sole" timekeeper for whom Plaintiffs sought to recover fees)(emphasis added); Wong v. Hunda Glass Corp., 2010 WL 3452417, at *3 (S.D.N.Y. Sept. 1, 2010) (awarding $350 per hour to two employment attorneys with twelve years of legal experience); De Los Santos v. Just Wood Furniture, Inc., 2010 WL 445886, at *3 (S.D.N.Y. Feb. 2, 2010) (showing the reasonable rate for an employment attorney as $250–$350 per hour); Torres v. City of N.Y., 2008 WL 419306, at *1 (S.D.N.Y. Feb. 14, 2008) ($350 per hour is reasonable for an attorney with ten years' experience); Tlacoapa, 386 F.Supp.2d at 369 -370 (awarding $250 per hour to an attorney with twenty years of experience, $200 per hour to an attorney with nine years of experience, and $150 per hour to an attorney with three years.); Marisol A. ex rel. Forbes v. Giuliani, 111 F.Supp.2d 381, 386 (S.D.N.Y. 2000) (a rate of $300 per hour for an attorney with 10–15 years' experience was reasonable.).

Moreover, in considering the appropriate hourly rate, the Court has relied on its own knowledge of the rates charged by practitioners. See McDonald ex rel. Prendergast

---

[1] Attorney Edwards seems to have worked mostly on document reviews for the 6.8 hours billed at $300 per hour. See, e.g., Pls.' Mem., Ex. D (Sept. 17 2010 billing – Edwards- Begin reviewing documents (3); Sept. 20, 2010 billing – Edwards-continue reviewing documents (3.5)). Similarly, Attorney Silverstone seems to have only conferred with Mr. Middlebrook, prepared fax for R. Pastore regarding intent to file small claims action, and filed a small claims complaint in Harrison Town Court against R. Pastore. Id.

v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96-97 (2d Cir. 2006). Accordingly, after considering all the factors, the fact that there were six attorneys involved in this case, and the lack of information provided in this fee application, the Court concludes that the attorneys should be compensated at the following rates: Mr. Diamantopoulos ($250 per hour), Mr. Middlebrook ($250 per hour), Mr. Granath ($250 per hour), Ms. Edwards ($250 per hour), Mr. Seham ($250 per hour), and Mr. Silverstone ($250 per hour).

### i. PARALEGAL RATES

Plaintiffs seek paralegal compensation for Mr. Fabiankovic at the rate of $150 per hour and for Ms. Van Sant at the rate of $100 per hour. To determine the rate at which the paralegal hours are valued, the Court has to look at the prevailing market rates in the relevant community. See McKay v. Barnhart, 327 F.Supp.2d 263, 271 (S.D.N.Y. 2004). Courts in this district have awarded rates for paralegal time ranging from $50 to $150 per hour. See Spalluto v. Trump Int'l Hotel & Tower, No. 04 Civ. 7497, 2008 WL 4525372, at *14 (S.D.N.Y. Oct. 2, 2008) (citing cases). Plaintiffs' counsels fail to provide any background information for the paralegals they included in their submissions. Where the counsels fail to provide such information, courts have reduced proposed rates for paralegals. See, e.g., Tlacoapa v. Carregal, 386 F.Supp.2d 362, 370 (S.D.N.Y. 2005) (reducing requested rate of $125 per hour to $75 per hour where plaintiff failed to submit information about paralegal's experience). Therefore, the Court concludes that the paralegals should be compensated as follows:  Mr. Fabiankovic at the rate of $100 per hour and for Ms. Van Sant at the rate of $50 per hour.

## B. NUMBER OF HOURS REASONABLY EXPENDED

To determine the number of reasonable hours expended, contemporaneous time records, affidavits, and other materials must support the prevailing party's fee application. Chamblis v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058 (2d Cir. 1989); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983). The number of hours should be reduced for excessive, redundant, or otherwise unnecessary hours. Quarantino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). "In so doing, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks and citation omitted). "The critical inquiry is 'whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'" Cesario v. BNI Constr., Inc., 07 Civ. 8545, 2008 WL 5210209 at *7 (S.D.N.Y. Dec. 15, 2008) (citing Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992).

In reviewing the time record, the Court has identified unnecessary hours that will be discounted from the total number of hours claimed. For example, as the Court previously noted, the attorneys billed the client each time they conferred with each other. Said conferences were excessive. See Pls.' Mem., Ex. D (Jan. 10 2010 billing – Mr. Middlebrook – confer with Lee Sahem regarding settlement terms (.1); Jan. 11, 2010 – Mr. Middlebrook – "confer with Lee Sahem regarding teleconference with R. Pastore" (.1); Jan. 27, 2010 - Mr. Middlebrook – "confer with Lee Sahem regarding

teleconference with R. Pastore" (.1); Jan 29, 2010 – Mr. Middlebrook – "confer with Lee Sahem regarding settlement terms" (.1); Feb. 4, 2010 – Mr. Middlebrook – "confer with Lee Sahem regarding settlement discussions" (.1); Mar. 8, 2010 – Mr. Granath – "confer with Aty Middlebrook" (.5); Mar. 9, 2010 – Mr. Granath – "confer with Aty. Middlebrook in support of drafting complaint" (.6); Mar. 10, 2010 – Mr. Granath – "confer with Aty. Middlebrook in support of drafting complaint" (.5); Mar. 18, 2010 – Mr. Granath – "confer with Aty. Middlebrook for revising draft complaint" (.9); Mar. 24, 2010 – Mr. Granath – "confer with Aty. Middlebrook on revision to the complaint" (.2); Mar. 29, 2010 – Mr. Granath – "confer with Aty. Middlebrook for revising draft complaint" (.5)). These are examples some of the excessive conferencing occurring between the attorneys.

Additionally, the Court concludes that the firm excessively billed for unanswered calls made to the client's home and cell, for listening to voicemails that the clients left for the firm, for reviewing voicemails the attorneys left for each other, and for leaving voicemails for the client and opposing counsel. Moreover, the Court notes the excessive billing done for composing and responding to emails. For example, on May 27, 2011, Mr. Diamantopoulos billed 2.5 hours for reviewing emails from Mr. Fabiankovic regarding Plaintiffs' initial responses.

Additionally, the Court notes that Mr. Diamantopoulos also billed for vague activities and for activities that could have been accomplished by non-attorneys. Examples of such activities are conferring with the firm's staff regarding reserving the conference room for depositions and actually reserving said conference room (July 7, 2011 (0.1)); entering into his personal calendar information regarding the depositions (July 7, 2011 (0.2)); entering information into his calendars and reserving conference

room for meeting with client (July 22, 2011 (0.2)); consolidating two letters to client into

one letter (August 26, 2011 (0.3)); conferring with Haydee who left voicemail for Marino

Flores (November 17, 2010 (.1)); reviewing fax from the Court, entering it into his

calendar, conferring with Haydee to scan and email the notice to him, preparing email to

Mr. Torczyner regarding it, and then reviewing Mr. Torczyner response to his email

(November 24, 2010 (each activity billed as .1 hours for a total of .5) and again on May

20, 2011).

      In sum, the attorneys' acts of billing for numerous conferences or conversations

held with each other or other members of the firm's staff; and for numerous emails,

voicemails, scans, or faxes composed or reviewed about the clients' case were

excessive and warrant a reduction of the hours claimed. "[I]n dealing with such

surplusage, the court has discretion simply to deduct a reasonable percentage of the

number of hours claimed 'as a practical means of trimming fat from a fee application."

Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir.1998) (citing New York State

Ass'n for Retarded Children, 711 F.2d at 1146); see also DeVito v. Hempstead China

Shop, Inc., 831 F.Supp. 1037, 1045 (E.D.N.Y.1993) (reducing attorneys' fee request by

40% due to duplication of work, vague descriptions of some of the work performed and

the necessity of the work); Ass'n of Holocaust Victims for Restitution of Artwork and

Masterpieces v. Bank Austria Creditanstalt AG, 2005 WL 3099592, at *7 (Nov. 17,

2005) (reducing fee request by 25% to account for block billing, vagueness, and

excess).

      Thus, based on all of the foregoing factors, the Court will reduce the attorneys'

requests for fees as follows:  George Diamantopoulos by 40 percent, Lucas K.

Middlebrook by 25 percent, and Nicholas P. Granath by 25 percent and calculates compensation using the hourly rates noted supra. Thus:

| | | |
|---|---|---|
| George Diamantopoulos | 219.8 hours x $250 | = $54,950 |
| Lucas K. Middlebrook | 17.625 hours x $250 | = $4,406.25 |
| Nicholas P. Granath | 16.35 hours x $250 | = $4,087.50 |
| Sue Edwards | 6.8 hours x $250 | = $1,700 |
| Lee Sahem | 4.5 hours x $250 | = $1,125 |
| Stanley Silverstone | 2.6 hours x $250 | = $1,625 |
| Peter Fabiankovic | 12.7 hours x $100 | = $1,270 |
| Krista Van Sant | .2 hours x $50 | = $10 |

|   |   |
|---|---|
| Total | $69,713.75 |
| Less firm's portion of Flores settlement proceeds | -$4,000 |
| Total attorneys' fees | $65,173.75 |

Additionally, the Court has reviewed plaintiffs' request for costs, in the amount of $2,557.69, and finds them to be reasonable. Plaintiffs are entitled to an award of attorneys' fees and costs of $67,731.44.

## III. CONCLUSION

Plaintiffs' motion for damages is granted in the amount of $6,832 for L. Pastore and $120,909.38 for R. Patore. Additionally, Plaintiffs' motion for attorneys' fees and costs is granted in the amount of $67,731.44.

13

The Clerk of the Court is directed to enter judgment against Defendant J & B Club House Tavern, Inc. accordingly.

Dated:   October _15_, 2012
         White Plains, New York

**SO ORDERED**:

_____
GEORGE A. YANTHIS, U.S.M.J.

14